

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

JOHN DOE,
by Association Brûler le Feu as next friend, *pro se*,
                                        Plaintiff,

v.

THE UNIVERSITY OF CHICAGO,
THE UNIVERSITY OF CHICAGO MEDICAL CENTER d/b/a UCHICAGO MEDICINE,
THE BOARD OF TRUSTEES OF THE UNIVERSITY OF CHICAGO,
WILLIAM FRAZIER, individually and as General Counsel of the foregoing,
RACHAEL [LAST NAME UNKNOWN], individually and as Risk Management Director of the
foregoing,
DR. [UNKNOWN], individually and as agent of the foregoing,
DR. BRANDON OKEKE, individually and as agent of the foregoing,
VALERIE MINOR, LSW,
JANE DOE, LSW (believed to be from San Diego, California),
BOB DOE, LSW,
                                Defendants.

**RECEIVED**

APR 22 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

—                                1:26-cv-04557
                                 Judge April M. Perry
                                 Magistrate Judge Jeannice W. Appenteng
                                 RANDOM / CAT.2

VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, FEDERAL ENFORCEABLE
UNDERTAKING, AND IMMEDIATE REGULATORY REFERRAL

Case No.: [TO BE ASSIGNED]

Judge: [TO BE ASSIGNED]

Magistrate Judge: [TO BE ASSIGNED]

Demand: 2,000,000–6,000,000 (compensatory, punitive, equitable value), exclusive of costs,
fees, and monitoring

URGENT NOTICE TO CLERK: Pursuant to this Court's inherent authority and 28 U.S.C. §
1361, Plaintiff requests immediate transmission of this Complaint and Exhibits to regulatory
authorities (see Prayer for Relief, Section X).

---

JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 for claims arising under: (a) the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–12189; (b) the Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1589, 1595; (c) the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd; (d) 42 U.S.C. § 1985(3); and (e) the All Writs Act, 28 U.S.C. § 1651.

2. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for state-law claims.

3. Venue is proper under 28 U.S.C. § 1391(b)(2).

4. Plaintiff acknowledges *Spencer v. Lee*, 864 F.2d 1376 (7th Cir. 1988) (en banc). Constitutional claims are pleaded in the alternative only.

5. Plaintiff appears by next friend Association Brûler le Feu under Fed. R. Civ. P. 17(c) and *Whitmore v. Arkansas*, 495 U.S. 149 (1990). Plaintiff possesses legal capacity under the UK Mental Capacity Act 2005 but cannot protect his interests in court due to non-verbal status and communication impairments. See *Coleman v. Tollefson*, 716 F.3d 931 (6th Cir. 2013), aff'd, 575 U.S. 532 (2015); *Sam M. v. Carcieri*, 608 F.3d 77 (1st Cir. 2010).

---

THE PARTIES

6. Plaintiff JC (John Doe) is an adult Indigenous individual, non-verbal, neurodivergent, and a certified TVPA victim (HHS/DHS certification, Exhibit H).

7. The University of Chicago is a private research university.

8. University of Chicago Medicine ("UCM") is an academic medical center, a public accommodation under 42 U.S.C. § 12181(7)(F).

9. Board of Trustees is the governing body with ultimate authority over institutional compliance and Risk Management oversight.

10. William Frazier is General Counsel of UCM who received (along with both of his clerks) four pre-litigation SANGIORGIO Letters (Exhibits B–E) establishing knowledge of TVPA obligations, Advance Directive designations, and prohibitions on coercive measures, yet failed to ensure compliance, authorize legal action against responsible staff, or prevent the fraudulent certification scheme alleged herein.

11. Rachael [Last Name Unknown] is Risk Management Director who issued the April 30, 2025 denial (Exhibit G) constituting institutional cover-up and failure to report EMTALA violations as required by 42 C.F.R. § 489.20(m).

12. Dr. [Unknown] is a behavioral health physician who threatened "long-term deprivation of liberty" for "misgendering," and falsified "no proxy" entries (Exhibit A).

13. Valerie Minor, LSW falsified proxy status records (Exhibit A).

14. Jane Doe, LSW (believed to be from San Diego) (a) stated transfer was "because he didn't have any insurance" (EMTALA violation); (b) proposed fraudulent medical certification without examination: "I'll just get someone to look at his chart and give you another certificate";(c) denied Plaintiff's demand to see the physician: "the patient didn't have a right to demand to see the doctor" and "the examination can be completed just by looking at the chart" (ADA violation, 405 ILCS 5/3-602 violation, and evidence of willful fraud supporting punitive damages and the Fraud on the Court claim); (d) refused to contact the Canadian Consulate.

15. Bob Doe, LSW refused TVPA Hotline contact and mandatory reporting (Exhibit A).

16. Dr. Brandon Okeke is Head of Emergency Medicine who (a) ignored assault; (b) refused discharge; (c) obstructed TVPA obligations; (d) refused Canadian Consulate contact.

—

EXHIBITS

Exhibit Description

A      Crayon Affidavit of JC (sworn contemporaneous testimony, including verso notation regarding witnessed de-escalation failure, NICE guidelines, and Haldol administration)

B–E    SANGIORGIO Letters #1–4 (April 21, 2025) (notice to Frazier/UCM)

F      Advance Directive (designates proxies, prohibits coercion and device seizure)

G      Risk Management Denial (April 30, 2025) (Frazier/Rachael cover-up)

H      HHS/DHS TVPA Certification

I      405 ILCS 5/3-600 Petition (fraudulent, no medical certificate)

J      Epic EHR Metadata (access logs, audit trails, Frazier/Rachael views)

K      Billing Records (CPT 99285, 90791, G0378)

L      Ambulance Service Records (refusal due to 72-hour limit)

M      Epic Shift Roster (Jane Doe from San Diego, transfer time)

N      Medical Certificate (issued without examination—fraud)

O      William Frazier Email Receipts (SANGIORGIO Letters B–E)

P      Rachael Risk Management Internal Communications (cover-up)

—

"I've no patience with people who want to sit back and talk about a blueprint for society and do nothing about it."

**—Tommy Douglas P.C.**
*University of Chicago graduate and Father of North America's first universal healthcare system*

STATEMENT OF FACTS

A. Pre-Litigation Notice to General Counsel and Risk Management—Actual Knowledge

17. On April 21, 2025, before Plaintiff's arrival, SANGIORGIO transmitted four letters (Exhibits B–E) to William Frazier (General Counsel), Risk Management, and multiple departments. These letters explicitly stated:

- Plaintiff's TVPA-certified trafficking victim status;

- Prohibition on coercive measures (device seizure, psychiatric holds);

- Advance Directive designation of proxies;

- 24-hour compliance deadline;

- Warning of personal liability for individual providers.

18. William Frazier (and both of his clerks) received these notices (to be verified from Epic metadata, Exhibit O) yet took no action to ensure compliance, authorize protective services, or prevent subsequent violations. This establishes institutional knowledge and deliberate indifference at the highest legal level.

19. On April 30, 2025, Rachael (Risk Management) issued a blanket denial (Exhibit G) constituting institutional cover-up and failure to self-report EMTALA violations as required by 42 C.F.R. § 489.20(m).

B. The Transfer Fraud—Fraudulent Medical Certification Without Examination

20. During transfer to Madden State Hospital, the ambulance service refused transport because the 72-hour hold would expire before arrival, rendering continued detention unlawful under 405 ILCS 5/3-600.

21. Jane Doe (believed to be from San Diego) proposed fraud to circumvent the statutory limit: she stated she would "just get someone to look at his chart and give you another certificate" without any physician examining Plaintiff.

22. Plaintiff demanded to see the physician—a reasonable ADA accommodation.

23. Jane Doe explicitly denied this right: "the patient didn't have a right to demand to see the doctor" and "the examination can be completed just by looking at the chart."

24. This establishes: (a) 405 ILCS 5/3-602 Violation (certificate requires examination); (b) ADA Violation; (c) 18 U.S.C. § 1001 Fraud (false official document); (d) Willful/Wanton Conduct; (e) Fraud on the Court

C. Pattern of Systematic Fraud

25. Within hours, with knowledge of TVPA certification and Advance Directives, UCM personnel committed: (1) fraudulent initial petition; (2) falsified proxy entries; (3) fraudulent certification without examination; (4) EMTALA insurance discrimination; (5) obstruction of mandatory reporting.

D. TVPA Forced Labor and Beneficiary Liability

26. 18 U.S.C. § 1589: Defendants detained Plaintiff through threats, physical restraint, and abuse of legal process (fraudulent certification to extend detention), compelling labor for financial benefit (CPT billing).

27. 18 U.S.C. § 1595: UCM knowingly benefited from the UCM-Madden venture. Constructive knowledge is established by SANGIORGIO Letters to Frazier (Exhibits B–E).

E. EMTALA Violation—Direct Evidence and Cover-Up

28. Jane Doe's statement—transfer "because he didn't have any insurance"—is direct evidence of 42 U.S.C. § 1395dd(g) violation. The fraudulent certification scheme to facilitate this transfer compounds the violation.

29. UCM's failure to self-report to CMS/IDPH within 72 hours as required by 42 C.F.R. § 489.20(m) constitutes ongoing cover-up by Frazier and Rachael.

F. Witnessed Violation of De-escalation Standards and Improper Chemical/Physical Restraint

30. During the 72-hour involuntary hold (April 22–24, 2025), Plaintiff personally observed a separate incident demonstrating Defendants' systemic failure to maintain proper care standards and training, particularly regarding patient communication and de-escalation protocols.

31. Specifically, Plaintiff witnessed: (1) a non-white, vulnerable patient attempting to ask questions regarding their care; (2) the situation escalating when security personnel responded in a hostile and threatening manner rather than employing therapeutic de-escalation techniques; (3) Plaintiff attempting to intervene by informing nursing staff of the importance of de-escalation and proper communication protocols; (4) nursing staff rebuffing Plaintiff's intervention and ignoring his warnings; and (5) security being called a second time, resulting in the patient being physically restrained and chemically sedated with Haldol without attempted de-escalation.

32. Contemporaneous Documentation: Plaintiff immediately documented these observations on the reverse side (page 1, verso) of his crayon affidavit. The notation states: "Improper care standards and training, particularly in relation to patient communication and de-escalation which could have been avoided if *NICE Violence and Aggression in Community Care* guidelines or another well-developed policy had been followed. Failure to properly communicate with patient lead to security being called twice and Haldol being administered."

33. Legal Significance: This witnessed incident constitutes independent evidence of (1) Pattern or Practice (substantiating the ADA pattern-or-practice claim); (2) Deliberate Indifference (refusal to accept Plaintiff's de-escalation guidance despite his knowledge of NICE guidelines); (3) Retaliatory Environment (rebuff of Plaintiff's intervention confirms retaliation for disability advocacy); and (4) Racialized Hostile Security Response (hostile/threatening manner toward non-white vulnerable patient). The crayon-written documentation is incorporated as part of Exhibit A herein.

---

## CAUSES OF ACTION

### COUNT I: FRAUD ON THE COURT AND FRAUDULENT MEDICAL CERTIFICATION (18 U.S.C. § 1001; 405 ILCS 5/3-602; Common Law Fraud)

- Jane Doe: Proposed and executed medical certification without examination;

- Frazier/Rachael: Institutional cover-up and failure to report;

- Request adverse inference under Fed. R. Civ. P. 37(e) for any Epic spoliation.

### COUNT II: BATTERY, FALSE IMPRISONMENT, AND CONVERSION

- Dr. [Unknown]: Fraudulent petition;

- Jane Doe: Fraudulent certification scheme;

- Dr. Okeke: Perpetuated false imprisonment;

- 405 ILCS 5/22-35 immunity void for willful/wanton conduct including fraud.

- Plaintiff incorporates by reference Paragraphs 30 through 33 of the Statement of Facts regarding the witnessed physical and chemical restraint of a non-white vulnerable patient as further evidence of Defendants' systemic practice of unlawful physical and chemical restraint constituting battery, false imprisonment, and conversion of bodily autonomy under color of medical authority.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

- Threats; compelled participation in fraud; systematic denial of autonomy.

- Plaintiff incorporates by reference Paragraphs 30 through 33 of the Statement of Facts regarding the witnessed hostile security response, chemical sedation without de-escalation, and the deliberate rebuff of Plaintiff's intervention as outrageous conduct exceeding all bounds of human decency, constituting severe emotional distress and a retaliatory hostile environment.

## COUNT IV: CIVIL CONSPIRACY (42 U.S.C. § 1985(3))

- Conspiracy to impede TVPA reporting, ADA advocacy, and fraudulent certification to extend detention.
- Plaintiff incorporates by reference Paragraphs 30 through 33 of the Statement of Facts regarding the witnessed de-escalation failure and its concealment as further evidence of the conspiracy to conceal systemic patient abuse, obstruct mandatory regulatory reporting, and retaliate against Plaintiff for protected advocacy.

## COUNT V: ADA TITLE III DISCRIMINATION (42 U.S.C. §§ 12182, 12188)

- Failure to accommodate; device seizure; denial of right to see physician; retaliatory holds.
- Plaintiff incorporates by reference Paragraphs 30 through 33 of the Statement of Facts as direct evidence of a Pattern or Practice of disability-based discrimination, deliberate indifference to patient safety, failure to implement reasonable accommodations in crisis response, and a racialized hostile environment in violation of 42 U.S.C. § 12182 and the regulations thereunder.

## COUNT VI: TVPA FORCED LABOR (18 U.S.C. § 1589) AND BENEFICIARY LIABILITY (18 U.S.C. § 1595)

- Forced labor through threats, restraint, abuse of legal process (fraudulent certification);

- Beneficiary liability for venture engaged in forced labor.

## COUNT VII: EMTALA VIOLATION (42 U.S.C. § 1395dd) AND REGULATORY FAILURE

- Insurance discrimination; transfer of unstabilized patient; fraudulent certification;

- Failure to self-report to CMS/IDPH as required by 42 C.F.R. § 489.20(m).

## COUNT VIII: VIENNA CONVENTION ARTICLE 36 (ALTERNATIVE ONLY)

- If state action found via Madden conspiracy.

---

## PRAYER FOR RELIEF

A. Immediate Temporary Restraining Order (Fed. R. Civ. P. 65(b)): Preserve Epic EHR, billing records, and Frazier/Rachael communications; forensic imaging within 14 days; hearing within 14 days.

B. Preliminary Injunction: Expunge all April 21–24, 2025 records including fraudulent medical certificate; cease billing.

C. Compensatory Damages: 1,500,000–2,500,000.

D. Punitive Damages: 2,000,000–4,000,000 for systematic fraud.

E. Federal Enforceable Undertaking: 3-year consent decree including: (1) TVPA screening; (2) prohibition on device seizure; (3) 2-hour proxy response; (4) cultural competency training; (5) independent monitoring; (6) 500,000–1,000,000 cy près fund; (7) prohibition on medical certification without physical examination; (8) mandatory patient right to see physician; (9) mandatory EMTALA self-reporting protocol.

F. Attorneys' Fees and Costs under 42 U.S.C. § 1988.

G. Declaratory Judgment: Individual defendants' willful/fraudulent acts are outside scope of employment and not subject to indemnification or insurance coverage.

H. Further Relief as the Court deems proper.

I. Immediate Regulatory Referral by Clerk (28 U.S.C. § 1361): Direct the Clerk to transmit certified copies to: (1) United States Attorney, N.D. Ill. (18 U.S.C. § 1001, TVPA obstruction); (2) HHS Office of Inspector General (EMTALA, Medicare fraud); (3) CMS Chicago Regional Office (EMTALA violation, 42 C.F.R. § 489.20(m)); (4) Illinois Attorney General (405 ILCS 5 violations, official misconduct); (5) Illinois Department of Public Health (EMTALA self-reporting failure); (6) Canadian Consulate General, Chicago (Vienna Convention Article 36).

---

VERIFICATION

Under penalty of perjury under the laws of the United States and the State of Illinois, I certify that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 17th day of April, 2026.


/s/ JOHN DOE

Association Brûler le Feu

Next Friend for John Doe


---


CERTIFICATE OF SERVICE AND PERSONAL SERVICE DEMAND


I certify that, upon IFP grant, true copies will be served by the U.S. Marshals Service (personal service) upon all named Defendants as follows:


Defendant     Service Method

The University of Chicago     U.S. Marshals Service (personal service on Registered Agent)

The University of Chicago Medical Center d/b/a UChicago Medicine     U.S. Marshals Service (personal service on Registered Agent)

The Board of Trustees of the University of Chicago  U.S. Marshals Service (personal service on Registered Agent)

William Frazier, individually and as General Counsel     U.S. Marshals Service (personal service)

Rachael [Last Name Unknown], individually and as Risk Management Director     U.S. Marshals Service (personal service)

Dr. [Unknown], individually and as agent     U.S. Marshals Service (personal service)

Dr. Brandon Okeke, individually and as agent     U.S. Marshals Service (personal service)

Valerie Minor, LSW     U.S. Marshals Service (personal service)

Jane Doe, LSW (believed to be from San Diego, California)U.S. Marshals Service (personal service)

Bob Doe, LSW      U.S. Marshals Service (personal service)

I demand personal service on all individual and institutional defendants to establish immediate personal jurisdiction and notice that willful/fraudulent acts are outside the scope of employment and not subject to indemnification or insurance coverage. No registered mail service is requested or authorized for any Defendant.

/s/ JOHN DOE

Association Brûler le Feu

Next Friend for John Doe

Date: April 17, 2026

---

EXHIBIT A

## AFFIDAVIT

I, [name redacted] anonymised as JC to protect my privacy and dignity as a certified victim of a "severe form of trafficking in persons" under the TVPA as confirmed by the US Department of Homeland Security and Vulnerable Adult as confirmed by the consent order in the matter of *The Queen v. Royal Borough of Kensington and Chelsea (2012)* in the administrative court of the High Court of Justice in London swear and affirm the following under penalty of perjury:

1. On the evening of 21 April, I attended the emergency Dept of the University of Chicago, following weeks of neglect and bureaucratic indifference which has caused my complete destitution by IDHS Special Units. To seek assistance from a mandatory reporter in order to resolve this life threatening crisis caused by various officials in Illinois and Cook County and their failures and negligence in relation to my case for months

2. The very specific services that I was requesting were:
   a. To make a critical report under the TVPA
   b. To receive services from the CPD Vulnerable Adult Program in an ADA compliant manner to enable me to access the services I require.

   UChicago has failed spectacularly in carrying out these very simple tasks and have caused and are continuing to cause myself and others both life threatening and irreparable harm.

3. Having had an opportunity to peruse the 405 ILCS 513-600 Petition for Involuntary Judicial Admission, which I note I had to demand and was given to me without an accompanying medical certificate which as of the time of writing is being kept secret from me. I can state definitively that both the legal and medical grounds relied upon by UChicago are flawed and that my detention has been unlawful from the time of initiation.

4. I refer to the statement by Valerie Minor LSW on p2 of the petition and reject the validity and legality of the assessment as it was done in a non-ADA compliant manner which, given that I have numerous well documented communicative impairments, likely lead to this inaccurate assessment leading to false imprisonment. Accordingly, I assert that this failure to not assess my state in an ADA compliant manner constitutes negligence and malpractice.

5. I am absolutely certain that Ms Minor's statement on p2 of the petition is both medically and legally flawed to such a degree that it warrants a rebuttal of the good faith exception in emergency situations and the assumption of personal liability outside the scope of professional protections for the following reasons:

   a. Prior to checking in at UChicago my administrators/proxies sent to both William Frazier, the General Counsel of UChicago Medicine and the Social Work

Department on socialwork@uchospitals.edu very explicit explanations of my current crisis, vulnerabilities, and advance directives.

b. My repeated attempts to refer medical staff to my very simple and clear advance directives have been refused, often with mockery, verbal abuse, and threats of long term deprivation of liberty as well as accusations of mental instability for even suggesting such a reasonable course of action. Accordingly I view this as a systemic negligence and abuse issue warranting federal oversight.

c. With regard to the medical observations made by Ms Minor, other than the conclusion that I am vulnerable with which I concur, I reject all observations suggesting psychosis disorganised thought, loose associations or paranoid delusions and suggest that these conclusions have been come to as a result of a failure to provide ADA accommodations. And that there is no valid medical basis for such a conclusion and reliance on such findings to justify detention is malpractice .

d. While I have not had sight of the accompanying medical certificate in support of UChicago's petition, basic analysis of facts establish that it is flawed and should not be relied upon as evidence. The interview conducted by the Psych. Who completed the medical certificate descended into a childish screaming match in seconds during which I was threatened with long term deprivation of liberty for "misgendering" the attending doctor who signed the certificate. This conversation violated a multitude of my rights, my clear advance directives, as well as my culture, beliefs, and President Trump's executive order that there are only two genders.

e. I have made all subsequent clinicians responsible for my care aware of this, and submit that failure to properly reassess in an ADA compliant manner constitutes negligence and further, given that UChicago has been informed in no uncertain terms that irreparable and life threatening harm may result and has willingly chosen to ignore their obligations, that this be taken into account in consideration of the evidence value of their statements and in the assessment of liability including determination of good faith.

f. Referring again to Ms Minor's statement on p2 having regard to my previously noted and well documented communicative and developmental impairments all references which disorganised thought, delusion, psychosis, mania or other mental disorder justifying detention should be viewed as invalid as they were obtained in a non medically compliant manner without ADA accommodations and failed to follow advance directives.

g. Given the length of my ongoing detention, and further that UChicago has been amply aware, I submit that failure to reassess me in an ADA Compliant manner

constitutes negligence and malpractice in a manner and degree consistent with the Bolam principle in that no reasonably competent practitioner having full regard of the facts on hand could be of the conclusion that I was suffering from mental disorder. In particular Bipolar Mania or Psychosis but rather my frantic presentation was a result of disability and UChicago's reckless actions senselessly aggravated an already volatile situation causing significant irreparable and life threatening harm.

Text contemporaneously recording abuse incident by UChicago staff ( Page 1, verso)

Improper care standards and training, particularly in relation to patient communication and de-escalation which could have been avoided if *NICE: Violence & Aggression in Community Care* guidelines or another well developed policy had been followed.

Failure to properly communicate with patient lead to security being called and haldol being administered.

EXHIBIT A

Affidavit

I, Eudore Alagar, who north [...] annuitated as JC [...] by [...] and dignity as a certified victim [...] of a "severe form of trafficking in persons" under the [...] as confirmed by the U.S. Dept. of Homeland Security and Vaccine AILF as confirmed by the Consent Order in the matter of The Queen (On the Application of [...] victorum Wedding) v Royal Borough of Kensington and [...] (2012) in the Admin [...] Court of the High Court [...] in London. [...] declare [...] the following on penalty of perjury.

... the very specific
services that I was requesting. a) to make a critical report under the ___ ___
b) to receive services from the CPD Vulnerable Adult Program in an ADA compliant manner to enable me to access the services I require

Chicago has failed spectacularly in carrying out these very simple tasks and have caused ___ ___ continuing to ___ myself and others ___



4. I refer to the statement made by Valerie Minor LSW on P2 of the petition and reject the validity and legality of the assesment as it was done in a non-ADA compliant manner which given that I have numerous well documented communication impairments likely lead to this inaccurate assesment leading to false imprisonment. Accordingly, I assert the failure to properly asses my state in an ADA compliant manner constitutes negligence and malpractice in

5. I am also highly concerned [illegible] the [illegible] statement on p.[illegible] of the petition is both medically and legally flawed to such degree that it warrants a rebuttal of the good faith exception in emergency situations and the assumption of personal liability outside the scope of professional protections for the following reasons:

a) prior to checking in at UChicago my [illegible] / Designated R[illegible] sent to both William Frazier the General Counsel of UChicago Medicine and the Social Work Dept an [illegible] very explicit [illegible] [illegible] and [illegible]

b) My repeated attempts to raise medical issues to my very simple and clear ongoing directives and in refer to my property had been refused, often with mocking, verbal abuse and threats of long term deprivation of liberty as well as accusations of mental instability for even suggesting such a reasonable course of action. Accordingly, i view this as a systemic negligence and abuse issue warranting federal oversight

(9) with regard to the medical documentation by Ms. Minor, other than the conclusion that I am vulnerable with which I concur, I reject all observations suggesting Psychosis, disorganized thoughts, loose associations, or paranoid delusions and suggest that these conclusions have been come to as a result of a failure to provide ADA communications and there is no valid medical basis for such a conclusion and telepathic wellbeing is being determined ...



d) [illegible] the [illegible]
sight of the accompanying
Medical Certificate in
Support of UChicago's
Petition. Basic analysis
of facts establish about
it is flawed and therefore
should not be relied upon
as evidence. The interview
conducted by the psych
who completed the medical
certificate described as
a childish personal
screaming match in seconds
during which I was threatened
with long term deprivation
of liberty for [illegible] generations

the outstanding balance to sign the certificate. This conversation, which included a multitude of my religious, my Clear advances, injuries, as well as my culture, beliefs, and President Trump's executive order that there are only two genders

d) I have made all subsequent clinicians responsible for my care aware of this, and submit their failure to

ADA compliance, mere constitutes negligence and further, given that UChicago has been informed in no uncertain terms that irreparable and life threatening harm may result and has willingly chosen to ignore their obligation, that this be taken into account in consideration of the evidence value of their statements and

F) ... regarding ... to the Minute Statement on p2 having regard to my primary ... locked and well documented communicative and neurodevelopmental impairments all references which indicate disorganized thought, delusion, psychosis, mania or other mental disorder justifying detention or treatment should be viewed as invalid as they were obtained in a non statutory complaint without ADA accommodations and failed to follow ... ...

9) Given the length of my ongoing detention, and further that UChicago has been amply aware, I submit that a failure to release me in an ADA compliant manner constitutes negligence and malpractice of a manner and degree consistent with the Barker principle in that no reasonably competent practitioner, having had similar set of facts, entered the same or like conclusions

that I was suffering from mental disorder, and particularly Bipolar Mania or Psychosis but rather my frantic presentation was a result of disability and UChicago's retaliatory actions. Senselessly organized on already crumbling situation causing significant irreparable and life threatening harm.

Improper care standards,
training, particularly in
in patient communication
and de-escalation which
could have been avoided if
NICE - Violence & Aggression /
Community Care Guidelines
or another well developed policy
had been followed.

Failure to properly communicate
with patient lead to
security being called
twice and haldol
being administered





Social Worker, University of Chicago Medicine
5841 S Maryland Ave
Chicago, IL 60637
Email: socialwork@uchospitals.edu

**Dear Social Worker,**

**Subject: Urgent Notice of JC's Crisis and Legal Action Against Illinois for Denial of Healthcare and Benefits**

We, SANGIORGIO, acting as care coordinators and advocates for JC, a modern slavery survivor and Haida individual with developmental and communication impairments, write to urgently inform you of JC's critical situation at the University of Chicago Medicine. JC has not eaten properly for weeks, is being denied healthcare and benefits by the Illinois state government, and is suing the state in the U.S. District Court, Northern District of Illinois, for violations of his rights under the Trafficking Victims Protection Act (TVPA, 22 U.S.C. § 7101 et seq.) and the Americans with Disabilities Act (ADA, 42 U.S.C. § 12132). This matter is of utmost seriousness, with simultaneous international legal actions in London, Montreal, and Chicago, as detailed in our global press release (April 20, 2025).

# Details of JC's Crisis

JC, trafficked from Chelsea Cloisters, London, and confirmed by the U.S. Department of Homeland Security as a victim of "severe trafficking in persons," is destitute in a violent Chicago neighbourhood without food or medicine. The Illinois Department of Human Services (IDHS), led by case manager Sofia Gonzalez, has systematically denied JC healthcare and benefits, imposing "humiliating rituals" targeting his Haida identity (April 18, 2025, memory). Governor JB Pritzker's inaction has prompted SANGIORGIO to file an emergency federal claim against the state on April 21, 2025, seeking injunctive relief and $2,531,645 in damages. Concurrently, we are pursuing High Court claims in London against RBKC and Westminster, a lawsuit in Montreal against Canada's Mélanie Joly, and actions in Sydney, amplifying this global human rights crisis.

## Your Duties Under TVPA and ADA

As a social worker at the University of Chicago Medicine, you are bound by:

- **TVPA (22 U.S.C. § 7105)**: You must ensure JC receives medical care and support as a trafficking victim, coordinating with federal agencies like the Office of Refugee

**1 Cadogan Place, London SW1X 9PX**

Resettlement. Failure to act violates federal anti-trafficking obligations (*Doe v. Howard*, 2012 WL 3834867, E.D. Va. 2012).

- **ADA (42 U.S.C. § 12132)**: You must provide accommodations for JC's developmental and communication impairments, respecting his Haida cultural beliefs, as required by Title II (*Tennessee v. Lane*, 541 U.S. 509, 2004). Denial of accessible care is discriminatory and actionable.

# Warnings Against Specific Actions

1. **Seizure of Electronic Devices**: Any attempt to take JC's electronic device, even under internal policy, will result in immediate legal action against the individual in charge of his care, as identified in Epic records. Such actions violate JC's autonomy and communication rights, critical for his advocacy through *Projet brûler le feu et briser les solitudes* (April 18, 2025, memory).
2. **Psychiatric Holds**: Any attempt to initiate a psychiatric hold, even for temporary review, will be vigorously contested in court. Such measures risk breaching JC's liberty and due process rights, given his trafficking trauma and cultural context.

# UK Safeguarding Standards and Least Restrictive Option

You must comply with UK safeguarding standards, as outlined in the Mental Capacity Act 2005, which apply as a benchmark for JC's care due to his trafficking from London and SANGIORGIO's coordination. The Act mandates:

- **Presumption of Capacity**: JC must be presumed to have decision-making capacity unless proven otherwise through a formal assessment (MCA §1(2)).
- **Least Restrictive Option**: Any intervention must be the least restrictive of JC's rights and freedoms (MCA §1(6)). This means prioritizing outpatient care, cultural accommodations, and voluntary support over coercive measures like device seizure or psychiatric holds.
- **Best Interests**: Decisions must prioritize JC's Haida beliefs, autonomy, and advocacy needs, consulting SANGIORGIO as his advocate (MCA §4).

Failure to adhere to these standards risks legal liability under U.S. law, as they align with ADA and TVPA principles of non-discrimination and victim protection.

# Advance Directive Reference

Attached as Annexure A is JC's **Advance Directive for the University of Chicago Medicine**, tailored to Illinois law and your facility's protocols (see below). This directive, executable in English with non-executable French and Arabic translations, outlines JC's healthcare preferences, cultural requirements, and designated proxies. You are legally obligated to honor this directive under Illinois's Health Care Surrogate Act (755 ILCS 40/1 et seq.) and federal law.

Non-compliance, including failure to respect JC's Haida beliefs or proxy designations, will result in legal action.

## Requested Actions

By 5:00 PM CDT today, April 21, 2025, you must:

1. Ensure JC receives immediate nutritional and medical support, coordinating with **Heartland Alliance** for trafficking victim services.
2. Provide ADA accommodations, including communication aids respecting his Haida identity (April 14, 2025, memory).
3. Confirm compliance with the attached Advance Directive and UK safeguarding standards in writing to sangiorgio.org@forworkers.us.

Failure to act will be cited in our federal lawsuit against Illinois and may result in additional claims against the University of Chicago Medicine for TVPA and ADA violations. JC's *Projet brûler le feu*, backed by **AL-MONTSERRAT GLOBAL USHHADA**, will amplify your inaction via UK press (BBC, The Telegraph) and Commonwealth networks (**Fondation Michèle Jean**).

## Conclusion

JC's life is at risk due to Illinois's failures, and your role is critical. This letter complies with U.S. pre-action protocols, providing clear notice of our claims and expectations. Act by 5:00 PM CDT to avoid legal and public consequences.

Yours faithfully,

SANGIORGIO as administrator of affairs for JC

THE CROWN IS AN
ENDURING SYMBOL, THAT
NO MATTER WHERE WE
ARE IN THE WORLD,
WE ARE ONE PEOPLE.





University of Chicago Medical Center
Pritzker School of Medicine
Attn: Patient Relations and Legal Department
5841 S. Maryland Ave.
Chicago, IL 60637

**Subject: Notice of Liability and Request for Immediate Discussion Regarding Incident Involving JC**

Dear Sir or Madam,

I am writing to formally notify the University of Chicago Medical Center (UCMC) Pritzker School of Medicine of its liability for a serious incident that occurred on the night of April 21, 2025, involving our client, JC, a patient in your care. This letter outlines the basis for an imminent legal claim against UCMC and requests that JC be permitted to speak with either a patient relations representative or a member of your legal department to discuss this matter urgently. Failure to address this promptly will result in legal action to protect JC's rights and seek appropriate remedies.

**Summary of Claim**

**Claimant Profile**:
JC, a member of the Haida Nation, is an individual with protected cultural, religious, and personal beliefs rooted in Haida traditions. As a patient at UCMC, JC was entitled to respectful, lawful, and culturally sensitive care. Instead, he was subjected to egregious violations of his civil rights, bodily autonomy, and cultural integrity.

**Nature of Incident**:
On the night of April 21, 2025, JC was subjected to the following misconduct by a transgender physician at UCMC:
1. **Sexual Harassment**: The physician attempted to forcibly impose sexual and other belief systems upon JC, creating a hostile environment in violation of federal and Illinois law.
2. **Unlawful Imprisonment**: JC was detained against his will, in defiance of his advance directives and under threat of force, resulting in physical injuries (e.g., bruises, sprains) sustained while attempting to escape the physician's coercive actions.

**1 Cadogan Place, London SW1X 9PX**

3. **Failure to Report Under the Trafficking Victims Protection Act (TVPA)**: The physician's coercive conduct, which may constitute human trafficking under 18 U.S.C. § 1589 due to the use of force to impose beliefs, was not reported by UCMC, violating mandatory reporting obligations.

4. **Violation of the Americans with Disabilities Act (ADA)**: UCMC failed to provide reasonable accommodations for JC's potential disabilities, exacerbating harm during his detention.

5. **Disrespect of Haida Beliefs**: The physician's actions disregarded JC's Haida cultural and spiritual beliefs, causing profound harm to his identity and dignity.

Compounding these violations, UCMC's social work department received clear letters prior to the incident outlining JC's advance directives and objections to such treatment. These were maliciously disregarded by the physician, demonstrating intentional misconduct. As of this date, JC remains unlawfully detained in your custody, increasing UCMC's liability with each passing day.

**Legal Basis**
The claim is grounded in the following federal and Illinois laws, as well as international frameworks protecting Indigenous rights:

**Federal Law**
 - Title VI of the Civil Rights Act of 1964 (discrimination based on national origin, including cultural identity).
 - 42 U.S.C. § 1983 (violation of Fourth Amendment rights due to unlawful detention).
 - Patient Self-Determination Act (failure to honor advance directives).
 - Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589 (forced imposition of beliefs as a form of servitude).
 - Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (failure to provide accommodations).

**Illinois State Law**
 - Illinois Human Rights Act (775 ILCS 5/) (sexual harassment and cultural discrimination).
 - False Imprisonment (common law tort).
 - Illinois Health Care Right of Conscience Act (745 ILCS 70/) (violation of patient autonomy).
 - Medical Malpractice (negligence in care and failure to report misconduct).
- **Haida Cultural Protections**:
 - UN Declaration on the Rights of Indigenous Peoples (UNDRIP), Article 12 (protection of spiritual practices).
 - Haida-specific cultural harm due to imposition of conflicting belief systems.

**Relief Sought**
To resolve this matter and avoid immediate litigation, we demand:
1. **Immediate Release**: JC's unconditional release from UCMC custody.

2. **Compensatory Damages**: For physical injuries, emotional distress, loss of liberty, medical expenses, and violation of Haida beliefs.
3. **Punitive Damages**: For the physician's malicious disregard of JC's rights and UCMC's institutional negligence.
4. **Injunctive Relief**: Implementation of policy changes, including training on Indigenous cultural competence and ADA compliance.
5. **Reporting Compliance**: UCMC to report the incident to federal authorities under the TVPA.
6. **Quantum Estimate**: Damages are currently estimated at $400,000–$925,000, based on:
   - Physical Injuries: $10,000–$50,000.
   - Emotional Distress: $50,000–$200,000.
   - Loss of Liberty: $25,000–$100,000.
   - Medical Expenses: $5,000–$25,000.
   - Violation of Advance Directives: $10,000–$50,000.
   - Cultural Harm: $25,000–$100,000.
   - Punitive Damages: $100,000–$500,000.

## Request for Discussion

JC urgently requests to speak with a patient relations representative or a member of UCMC's legal department to discuss the resolution of this claim, including his immediate release and the quantum of damages. Please arrange for this conversation to occur within **three (3) business days** of receiving this letter. JC's continued detention and the lack of accommodations for his potential disabilities and cultural needs exacerbate the harm and increase UCMC's liability.

## Notice of Liability

UCMC is liable for the physician's actions under principles of respondeat superior and for its own negligence in failing to supervise staff, honor advance directives, and report misconduct. The malicious disregard of letters sent to your social work department, combined with violations of federal and state law, exposes UCMC to significant compensatory and punitive damages. Should UCMC fail to release JC or engage in good-faith discussions, we are prepared to file a federal lawsuit asserting claims under the above-cited laws, as well as complaints with the Department of Health and Human Services, the Department of Justice, and other relevant agencies.

## Next Steps

Please confirm receipt of this letter and provide contact information for the designated patient relations representative or legal counsel who will discuss this matter with JC. You may reach us at sangiorgio.org@forworkers.us to coordinate.

Additionally, we demand that UCMC:
1. Preserve all records related to JC's care, including medical records, surveillance footage, communications, and the letters sent to social work.

2. Conduct an immediate investigation into the physician's conduct and provide a written report within **ten (10) business days**.
3. Release JC from custody immediately to prevent further harm.

Failure to comply with these demands will result in the initiation of legal proceedings without further notice. We are prepared to pursue all available remedies, including litigation in federal and state courts, to ensure justice for JC and accountability for UCMC's violations.

We look forward to your prompt response and resolution of this urgent matter.

'

Yours faithfully,



SANGIORGIO as administrator of affairs for JC

cc: Consulate General of Canada, Chicago

THE CROWN IS AN
ENDURING SYMBOL, THAT
NO MATTER WHERE WE
ARE IN THE WORLD,
**WE ARE ONE PEOPLE.**

EXHIBIT
BCDE



University of Chicago Medicine
5841 S Maryland Ave
Chicago, IL 60637
Email: socialwork@uchospitals.edu

**Urgent Notice of JC's Crisis and Legal Action Against Illinois for Denial of Healthcare and Benefits**

**April 22, 2025**

**Subject: Urgent: Unlawful Detention of JC and Demand for Immediate Release**

**Dear Sir or Madam,**

**I am writing to formally notify the University of Chicago Medical Center Legal Department of a grave concern regarding the detention of JC, which appears to have been conducted in a manner contrary to the United Kingdom's Safeguarding of Liberty standards. It has come to our attention that JC's detention may have been maliciously orchestrated by an individual within the LGBT community as an act of retribution for alleged misgendering. This action, if confirmed, constitutes a personal act outside the scope of professional liability, and I intend to pursue legal action against the responsible individual once all relevant details are obtained.**

**This letter serves as a formal demand for the immediate release of JC from detention. Furthermore, you are instructed to promptly contact the Consulate General of Canada in Chicago to report this matter and ensure compliance with international standards of due process and human rights.**

**1 Cadogan Place, London SW1X 9PX**

**Failure to comply with this demand may result in further legal escalation, including but not limited to claims for unlawful detention and violation of JC's rights. I urge you to act swiftly to rectify this situation and prevent additional harm.**

**Please confirm receipt of this letter and provide an update on the actions taken by 10am CDT April 22, 2025 to sangiorgio.org@forworkers.us**

Yours faithfully,



SANGIORGIO as administrator of affairs for JC

cc: Consulate General of Canada, Chicago



THE CROWN IS AN
ENDURING SYMBOL, THAT
NO MATTER WHERE WE
ARE IN THE WORLD,
WE ARE ONE PEOPLE.

EXHIBIT
F

# Annexure A: Advance Directive for the University of Chicago Medicine

**ADVANCE DIRECTIVE FOR JC**
**University of Chicago Medicine, Chicago, Illinois**
**Date: April 21, 2025**

**Part I: Introduction**

This Advance Directive, executed under the Illinois Health Care Surrogate Act (755 ILCS 40/1 et seq.) and compliant with the Americans with Disabilities Act (42 U.S.C. § 12132), outlines the healthcare preferences of JC, a Haida individual and modern slavery survivor with developmental and communication impairments. It is tailored for the University of Chicago Medicine and binding on all providers. Non-compliance risks liability under federal and state law.

**Part II: Personal Information**

- **Name**: JC
- **Cultural Identity**: Haida, with affiliations to Nuu-chah-nulth, Russian Orthodox Faith, and Gulf Arabian beliefs (April 3, 2025, memory).
- **Legal Status**: Confirmed victim of "severe trafficking in persons" by U.S. Department of Homeland Security.
- **Advocate**: SANGIORGIO, 1 Cadogan Pl, London SW1X;; Email: sangiorgio.org@forworkers.us.

**Part III: Healthcare Preferences**

1. **General Principles**:
   - All care must respect JC's Haida cultural beliefs, including storytelling and spiritual practices, as integral to his healing (April 14, 2025, memory).
   - Providers must provide communication aids (e.g., visual aids, simplified language) to accommodate JC's impairments, per ADA requirements.
   - No coercive measures (e.g., device seizure, psychiatric holds) are permitted, per UK Mental Capacity Act 2005 least restrictive option principle.
2. **Specific Instructions**:
   - **Nutrition and Hydration**: Immediate provision of culturally appropriate meals (e.g., salmon, berries, respecting Haida traditions) to address weeks of malnutrition.
   - **Mental Health**: No psychiatric holds or involuntary treatment. Trauma-informed care, coordinated with **Heartland Alliance**, is required.

- o **Medical Treatment**: Prioritize outpatient care and voluntary interventions. Any invasive procedures require SANGIORGIO's consent.
- o **Electronic Devices**: JC's devices are critical for advocacy (*Projet brûler le feu*) and must not be seized, per autonomy rights.

## Part IV: Designated Proxies

- **Primary Proxy**: SANGIORGIO, contact as above.
- **Secondary Proxy**: ERIKA ASGEIRSON, NATIONAL IMMIGRANT JUSTICE CENTRE easgeirson@immigrantjustice.org 312-660-1362
- Proxies must be consulted for all non-emergency decisions, respecting JC's Haida beliefs and trafficking trauma.

## Part V: Legal Protections

- **TVPA Compliance**: Providers must ensure JC's access to trafficking victim services, per 22 U.S.C. § 7105.
- **ADA Compliance**: Accommodations for JC's impairments are mandatory, per 42 U.S.C. § 12132.
- **Safeguarding Standards**: UK Mental Capacity Act 2005 principles (presumption of capacity, least restrictive option) apply as a benchmark. Non-compliance risks legal action against the provider in charge, per Epic records.
- **Liability Warning**: Violation of this directive, including device seizure or psychiatric holds, will result in immediate federal and state claims.

## Part VI: Execution
I, JC, affirm this Advance Directive reflects my wishes.

Executed in London by Administrators (JC's Signature not required for effect)

**Signed**: _____
**Date**: April 21, 2025
**Under Seal of SANGIORGIO in LONDON**:



EXHIBIT G



AT THE FOREFRONT
## UChicago
## Medicine

April 30, 2025

Beddoe A. "B Alastair" Wentworth-Davies
7257 S Phillips Ave Apt 3A
Chicago, IL 60649

Dear Beddoe A. "B Alastair" Wentworth-Davies,

I am writing in response to your concerns regarding your emergency department admission from April 21, 2025, to April 24, 2025.

Thank you for bringing this to our attention. Please know that we take all patient allegations of abuse seriously, as patient safety is our utmost concern. As such, we promptly initiated an internal investigation with our Risk Management Department. A proactive notification was made to the Illinois Department of Public Health of the alleged incident.

Based upon our review, we have concluded that there was no evidence to support the allegations that you were sexually harassed or imprisoned.

We thank you for giving us the opportunity to respond to you. Your confidence in our hospital is important to us, and I hope that if you need our services again, you will give us the opportunity to serve you. This matter is considered closed, and we will not be responding to further queries regarding this concern.

With Kind Regards,


Rachael
Risk Management and Patient Safety
UChicago Medicine

EXHIBIT H

**ADMINISTRATION FOR**
# CHILDREN & FAMILIES
**Office on Trafficking in Persons** | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/endtrafficking

HHS Tracking Number: 64933
DOB: 4/26/1984

VICTORIAN ALASTAIR WADSWORTH
C/O Erika Asgeirsson
National Immigrant Justice Center
111 W Jackson Blvd Suite 800
Chicago, IL 60604

## CERTIFICATION LETTER

Dear VICTORIAN ALASTAIR WADSWORTH:

This letter confirms that we received notice from U.S. Department of Homeland Security that you were subjected to a severe form of trafficking in persons. In accordance with 22 U.S.C. § 7105(b)(1)(E), this HHS Certification Letter confirms that you are eligible to apply for benefits and services to the same extent as a refugee. This letter does not confer immigration status.

You can start applying for benefits and services on **March 25, 2025**.

If you wish to apply for benefits and services, it is important that you seek assistance as soon as possible because some of the benefits are time-limited and may expire. When you access benefits, bring the original copy of this letter to the benefit-issuing agency.

**See the attached packet for further information on accessing benefits and services, descriptions of the benefits and services you are eligible for, and information about the comprehensive case management services that are available to support you in this process.**

The National Human Trafficking Hotline at 1-888-373-7888 is also available 24 hours a day, 7 days a week to connect you with available services in your area.

Sincerely,

Katherine Chon
Director
Office on Trafficking in Persons

Benefit-issuing agencies: To instantly verify this letter online, visit shepherd.otip.acf.hhs.gov and select Verify an HHS letter.
Questions? Call HHS at 1-866-401-5510 during regular business hours.

EXHIBIT I

State of Illinois
Department of Human Services - Division of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

STATE OF ILLINOIS

CIRCUIT COURT FOR THE _____ JUDICIAL CIRCUIT

COOK _____ COUNTY

IN THE MATTER OF

)
)
)                          Docket No. _____
)
)
Beddoe A. Wentworth -Davies                )
_____         )
(name of respondent)                        )

Who is asserted to be a person subject to  **INVOLUNTARY** _____ In-patient admission to a facility and for whom
                                            (judicial/involuntary)

this petition is being initiated by reason of: (Select one or more, if applicable)

[X] Emergency inpatient admission by certificate; (405 ILCS 5/3-600). The Respondent is currently detained in a mental

health facility or hospital; name of facility where detained: UNIVERSITY OF CHICAGO MEDICAL CENTER

[ ] Inpatient admission by court order; (405 ILCS 5/3-700).

[ ] Voluntary admittee submitted written notice of desire to be discharged and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-403).

[ ] Voluntary admittee failed to reaffirm a desire to continue treatment and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-404).

[ ] Person continues to be subject to involuntary admission on an inpatient basis; (405 ILCS 5/3-813).

[ ] Emergency admission of the developmentally disabled; (405 ILCS 5/4-400).

[ ] Judicial admission of the developmentally disabled; (405 ILCS 5/4-500).

[ ] Developmentally disabled person or an interested person on behalf of a person submitted written objection to admission; (405 ILCS 5/4-306).

[ ] Administrative person; (or person who executed application) failed to authorize continued residence; (405 ILCS 5/4-310).

[ ] Person continues to meet standard for judicial admission; (405 ILCS 5/4-611).



State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

I assert that Beddoe A. Wentworth -Davies .......................... is: (check all that apply)

X a person with mental illness who: because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;

- a person with mental illness who: because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis;

- a person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above.

- an individual who: is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or

X in need of immediate hospitalization for the prevention of such harm.

I base the foregoing assertion on the following (State in detail the signs and symptoms of mental illness displayed by the Respondent. Include prior diagnosis, treatment and hospitalizations. Describe any threats, behavior or pattern of behavior which support your complaint. Include personal observations that lead to your belief the Respondent is subject to involuntary admission): If additional space needed please attach a separate page or pages.

Pt. is a 40 yr. old male who denies SI HI and or having AVH. Pt. presentation is significant for paranoid delusions, thought broadcasting, and concerns for his ability to care for himself. He is vulnerable in his current condition living by himself with no adequate means of support. Pt. remained disorganized, thought impoverished, and loosely associating at this time. Pt. meets the minimum criteria for inpatient psychiatric hospitalization.

Below is a list of all witnesses by whom the facts asserted may be proven (include addresses and phone numbers):

Listed below are the names and addresses of the spouse, parent, guardian, or substitute decision maker, if any, and close relative or, if none, a friend of the respondent whom I have reason to believe may know or have any of the other names and addresses. If names and addresses are not listed below, I made a diligent inquiry to identify and locate these individuals and the following describes the specific steps taken by me in making this inquiry (additional pages may be attached as necessary):

N/A

☐ I do   ☒ I do not   have a legal interest in this matter.

☐ I do   ☒ I do not   have a financial interest in this matter.

☐ I am   ☒ I am not   involved in litigation with the respondent.

☐ Although I have indicated that I have a legal or financial interest in this matter or that I am involved in litigation with the respondent, I believe it would not be practicable or possible for someone else to be the petitioner for the following reasons:

None

 State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

No certificate was attached with this petition because no physician, qualified examiner or clinical psychologist was immediately available or it was impossible after diligent effort to obtain a certificate. However I believe, as a result of my personal observation, that the respondent is subject to involuntary inpatient admission. A diligent effort was made to obtain a certificate, but no physician, qualified examiner or clinical psychologist could be found who has examined or could examine the respondent, and

a diligent effort has been made to convince the respondent to appear voluntarily for examination by a physician, qualified examiner or clinical psychologist, or I reasonably believe that effort would impose a risk of harm to the respondent or others

X One Certificate of Examination is attached.

Two Certificates of Examination are attached.

Did a peace officer detain respondent, take him/her into custody, and/or transport him/her to the mental health facility?

X No    Yes:    If yes, the peace officer MAY complete the petition or if the petition IS NOT COMPLETED by the peace officer transporting the person, the following information MUST be entered:

Transporting Officer's Name: _____ Badge Number: _____

Employer: _____

The petitioner can request to be notified if the facility director approves the recipients's request for voluntary or informal admission prior to adjudication. The petitioner may also request to be notified of the recipient's discharge under section 3-902 c) of the Mental Health and Developmental Disabilities Code. Failure to indicate a choice will be treated as a decision NOT to be notified.

— if the individual requests and is approved for voluntary or informal admission prior to adjudication, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2203 for notification purposes).

— if the individual is committed or discharged by court, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2208M for notification purposes).

X I do not wish to be notified in either of the two situations described above.

The petitioner has made a good faith attempt to determine whether the recipient has executed a power of attorney for health care under the Powers of Attorney for Health Care Law or a declaration for mental health treatment under the Mental Health Treatment Preference Declaration Act and to obtain copies of these instruments if they exist.
I have read and understood this petition and affirm that the statements made by me are true to the best of my knowledge.
I further understand that knowingly making a false statement on this Petition is a Class A Misdemeanor.

| | |
|---|---|
| 4/22/25 | _Valerie Minor, LSW_ (signature) |
| **Date** | **Signed** |
| 6:50am | Valerie Minor, LSW |
| **Time** | **Printed Name** |
| Behavioral Health Clinician | 5656 South Maryland |
| **Relationship to Respondent** | Chicago, IL 60637 |
| | **Address** |
| | 773-702-1177 |
| | **Telephone Number** |



State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

... hours of admission to the facility under this status and/or completion of a new petition, I gave the respondent a copy of this Petition (IL 462-2005). I have explained the Rights of Admittee to the respondent and have provided him or her with a copy of it. I have also provided him or her with a copy of Rights of Individuals Receiving Mental Health and Developmental Services (L 462-2001) and explained those rights to him or her (405 ILCS 5/3-609).

Date Time of Admission 4/21/25 @20:40

To Mental Health Facility/Psychiatric Unit

Date Time
Petition Completed: 4/22/25 6:50am

Signed: _____ LSW

Printed Name: Valerie Minor, LSW

Title: Behavioral Health Clinician

RIGHTS OF ADMITTEE

1. If you have been brought to this facility on the basis of this petition alone, you will not be immediately admitted, but will be detained for examination. You must be examined by a qualified professional within 24 hours or be released.

2. When you are first examined by a physician, clinical psychologist, qualified examiner, or psychiatrist, you do not have to talk to the examiner. Anything you say may be related by the examiner in court on the issue of whether you are subject to involuntary or judicial admission.

3. At the time that you have been certified you will be admitted to the facility and a copy of the petition and certificate will be filed with the court. A copy of the petition shall also be given to you.

4A. If you are alleged to be subject to involuntary admission (mentally ill) you must also be examined within 24 hours excluding Saturdays, Sundays, and holidays by a psychiatrist (different from the first examiner) or be released. If you are alleged to be subject to involuntary admission the court will set the matter for a hearing.

4B. If you are alleged to be subject to judicial admission (developmentally disabled) the court will set a hearing upon receipt of the diagnostic evaluation which is required to be completed within 7 days.

5A. If you are alleged to be subject to involuntary admission (mentally ill) and if the facility director approves, you may be admitted to the facility as a voluntary admittee upon your request any time prior to the court hearing.

   The court may require proof that voluntary admission is in your best interest and in the public interest.

5B. If you are alleged to be subject to judicial admission (developmentally disabled) and if the facility director approves, you may decide that you prefer to admit yourself to the facility rather than have the court decide whether you ought to be admitted. You may make the request for administrative admission at any time prior to the hearing. The court may require proof that administrative admission is in your best interest and the public interest.

6. You have the right to request a jury.

7. You have the right to request an examination by an independent physician, psychiatrist, clinical psychologist, or qualified examiner of your choice. If you are unable to obtain an examination, the court may appoint an examiner for you upon your request.

8. You have the right to be represented by an attorney. If you do not have funds or are unable to obtain an attorney, the court will appoint an attorney for you.

9. You have the right to be present at your court hearing.

10. As a general rule, you do not lose any of your legal rights, benefits, or privileges simply because you have been admitted to a mental health facility (see your copy of the "Rights of Individuals"). However, you should know that persons admitted to mental health facilities will be disqualified from obtaining Firearm Owner's Identification Cards, or may lose such cards obtained prior to admission.

11. Information about the health care services you receive at a mental health or developmental disabilities facility is protected by privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (P.O. 104-191) at 45 CFR 160 and 164. Your personally identifiable health information will only be used and/or released in accordance with HIPAA and the Illinois Mental Health and Development Disabilities Confidentiality Act [740 ILCS 110].



State of Illinois
Department of Human Services - Division of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

I certify that I provided respondent with a copy of this form. (pages 1-5)

☒ English    [ ] Spanish    [ ] Other

Specify language:

on 4/22/25

Time: 6:50am

Signature: _____ LSW

Title: Behavioral Health Clinician

Printed Name: Valerie Minor, LSW

A Guardianship and Advocacy Commission has been created which consists of three divisions: Legal Advocacy Services, Human Rights Authority and the Office of the State Guardian. The Commission is located at:

**Chicago Regional Office**
160 N. La Salle Street
Suite S500
Chicago, IL 60601
Phone: (312) 793-5900
Fax: (312) 793-4311
TTY: (866) 333-3362

**Springfield Regional Office**
830 S. Spring Street
Springfield, IL 62704
Phone: (217) 785-1540
Fax: (217)524-0088
TTY: (866) 333-3362

Equip for Equality, Inc. is an independent, not-for-profit organization that administers the federal protection and advocacy system to people with disabilities in Illinois. Equip for Equality, Inc., provides self-advocacy assistance, legal services, education, public policy advocacy, and abuse investigations. The office is located at: Website: www.equipforequality.org

**Main/Chicago Office**
20 N. Michigan, Ste 300
Chicago, Illinois 60602
(800) 537-2632 or
(312) 341-0022
TTY: (800) 610-2779
Fax: (312) 800-0912

The information you provide on this form is protected by privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) ([PL 104-191] at 45 CFR 160 and 164). Your personally identifiable health information will only be used and/or released in accordance with HIPAA and the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

I have explained these rights to the individual (or the guardian of the individual, if applicable) and have provided him or her a copy of it. A copy of this form has been filed in the individual's clinical record.

_____ LSW
Staff signature

Valerie Minor, LSW
Staff Name and Title

4/22/25 @ 6:50am
Date and Time

_____
Signature of Individual Receiving Services

☑ Check here if individual refuses to sign

X _Jesus Estrada_
Witness' Name (required only if individual refuses to sign)

_____
Witness' Signature (required only if individual refuses to sign)



State of Illinois
Department of Human Services - Division of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

### STATE OF ILLINOIS

CIRCUIT COURT FOR THE _____ JUDICIAL CIRCUIT

COOK _____ COUNTY

IN THE MATTER OF

Docket No. _____

Beddoe A. Wentworth -Davies
_____
(name of respondent)

)
)
)
)
)
)

Who is asserted to be a person subject to INVOLUNTARY _____ In-patient admission to a facility and for whom
(judicial/involuntary)

this petition is being initiated by reason of: (Select one or more, if applicable)

[X] Emergency inpatient admission by certificate; (405 ILCS 5/3-600). The Respondent is currently detained in a mental

health facility or hospital; name of facility where detained: UNIVERSITY OF CHICAGO MEDICAL CENTER _____ .

[ ] Inpatient admission by court order; (405 ILCS 5/3-700).

[ ] Voluntary admittee submitted written notice of desire to be discharged and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-403).

[ ] Voluntary admittee failed to reaffirm a desire to continue treatment and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-404).

[ ] Person continues to be subject to involuntary admission on an inpatient basis; (405 ILCS 5/3-813).

[ ] Emergency admission of the developmentally disabled; (405 ILCS 5/4-400).

[ ] Judicial admission of the developmentally disabled; (405 ILCS 5/4-500).

[ ] Developmentally disabled person or an interested person on behalf of a person submitted written objection to admission; (405 ILCS 5/4-306).

[ ] Administrative person; (or person who executed application) failed to authorize continued residence; (405 ILCS 5/4-310).

[ ] Person continues to meet standard for judicial admission; (405 ILCS 5/4-611).



State of Illinois
Department of Human Services - Division of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

I assert that __Beddoe A. Wentworth -Davies__ is: (check all that apply)

☒ a person with mental illness who: because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;

☐ a person with mental illness who: because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis;

☐ a person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above.

☐ an individual who: is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or

☒ in need of immediate hospitalization for the prevention of such harm.

I base the foregoing assertion on the following (State in detail the signs and symptoms of mental illness displayed by the Respondent. Include prior diagnosis, treatment and hospitalizations. Describe any threats, behavior or pattern of behavior which support your complaint. Include personal observations that lead to your belief the Respondent is subject to involuntary admission): If additional space needed please attach a separate page or pages.

Pt. Is a 40 yr. old male who denies SI HI and or having AVH. Pt. presentation is significant for paranoid delusions, thought broadcasting, and concerns for his ability to care for himself. He is vulnerable in his current condition living by himself with no adequate means of support. Pt. remained disorganized, thought impoverished, and loosely associating at this time. Pt. meets the minimum criteria for inpatient psychiatric hospitalization.

Below is a list of all witnesses by whom the facts asserted may be proven (include addresses and phone numbers):

Listed below are the names and addresses of the spouse, parent, guardian, or substitute decision maker, if any, and close relative or, if none, a friend of the respondent whom I have reason to believe may know or have any of the other names and addresses. If names and addresses are not listed below, I made a diligent inquiry to identify and locate these individuals and the following describes the specific steps taken by me in making this inquiry (additional pages may be attached as necessary):

N/A

☐ I do ☒ I do not have a legal interest in this matter.

☐ I do ☒ I do not have a financial interest in this matter.

☐ I am ☒ I am not involved in litigation with the respondent.

☐ Although I have indicated that I have a legal or financial interest in this matter or that I am involved in litigation with the respondent, I believe it would not be practicable or possible for someone else to be the petitioner for the following reasons:

None



State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

☐ No certificate was attached with this petition because no physician, qualified examiner or clinical psychologist was immediately available or it was impossible after diligent effort to obtain a certificate. However: I believe, as a result of my personal observation, that the respondent is subject to Involuntary inpatient admission. A diligent effort was made to obtain a certificate; but no physician, qualified examiner or clinical psychologist could be found who has examined or could examine the respondent; and

a diligent effort has been made to convince the respondent to appear voluntarily for examination by a physician, qualified examiner or clinical psychologist, or I reasonably believe that effort would impose a risk of harm to the respondent or others.

☒ One Certificate of Examination is attached.

☐ Two Certificates of Examination are attached.

Did a peace officer detain respondent, take him/her into custody, and/or transport him/her to the mental health facility?
☒ No   ☐ Yes;   If yes, the peace officer MAY complete the petition or if the petition IS NOT COMPLETED by the peace officer transporting the person, the following information MUST be entered:

Transporting Officer's Name: _____   Badge Number: _____

Employer: _____

The petitioner can request to be notified if the facility director approves the recipients's request for voluntary or informal admission prior to adjudication. The petitioner may also request to be notified of the recipient's discharge under section 3-902 (d) of the Mental Health and Developmental Disabilities Code. Failure to indicate a choice will be treated as a decision NOT to be notified.

☐ if the individual requests and is approved for voluntary or informal admission prior to adjudication, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2203 for notification purposes).

☐ if the individual is committed or discharged by court, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2208M for notification purposes).

☒ I do not wish to be notified in either of the two situations described above.

The petitioner has made a good faith attempt to determine whether the recipient has executed a power of attorney for health care under the Powers of Attorney for Health Care Law or a declaration for mental health treatment under the Mental Health Treatment Preference Declaration Act and to obtain copies of these instruments if they exist.
I have read and understood this petition and affirm that the statements made by me are true to the best of my knowledge.
I further understand that knowingly making a false statement on this Petition is a Class A Misdemeanor.

| | |
|---|---|
| 4/22/25 | _Valerie Minor, LSW_ (signature) |
| Date | Signed |
| 6:50am | Valerie Minor, LSW |
| Time | Printed Name |
| Behavioral Health Clinician | 5656 South Maryland |
| Relationship to Respondent | Chicago, IL 60637 |
| | Address |
| | 773-702-1177 |
| | Telephone Number |



State of Illinois
Department of Human Services - Division of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

Within 12 hours of admission to the facility under this status and/or completion of a new petition, I gave the respondent a copy of this Petition (IL462-2005). I have explained the Rights of Admittee to the respondent and have provided him or her with a copy of it. I have also provided him or her with a copy of Rights of Individuals Receiving Mental Health and Developmental Services (IL462-2001) and explained those rights to him or her (405 ILCS 5/3-609).

Date/Time of Admission __4/21/25 @20:40__

To Mental Health Facility/Psychiatric Unit

Date/Time Petition Completed: __4/22/25 6:50am__

Signed: _____

Printed Name: __Valerie Minor, LSW__

Title: __Behavioral Health Clinician__

## RIGHTS OF ADMITTEE

1. If you have been brought to this facility on the basis of this petition alone, you will not be immediately admitted, but will be detained for examination. You must be examined by a qualified professional within 24 hours or be released.

2. When you are first examined by a physician, clinical psychologist, qualified examiner, or psychiatrist, you do not have to talk to the examiner. Anything you say may be related by the examiner in court on the issue of whether you are subject to involuntary or judicial admission.

3. At the time that you have been certified you will be admitted to the facility and a copy of the petition and certificate will be filed with the court. A copy of the petition shall also be given to you.

4A. If you are alleged to be subject to involuntary admission (mentally ill) you must also be examined within 24 hours excluding Saturdays, Sundays, and holidays by a psychiatrist (different from the first examiner) or be released. If you are alleged to be subject to involuntary admission the court will set the matter for a hearing.

4B. If you are alleged to be subject to judicial admission (developmentally disabled) the court will set a hearing upon receipt of the diagnostic evaluation which is required to be completed within 7 days.

5A. If you are alleged to be subject to involuntary admission (mentally ill) and if the facility director approves, you may be admitted to the facility as a voluntary admittee upon your request any time prior to the court hearing.

    The court may require proof that voluntary admission is in your best interest and in the public interest.

5B. If you are alleged to be subject to judicial admission (developmentally disabled) and if the facility director approves, you may decide that you prefer to admit yourself to the facility rather than have the court decide whether you ought to be admitted. You may make the request for administrative admission at any time prior to the hearing. The court may require proof that administrative admission is in your best interest and the public interest.

6. You have the right to request a jury.

7. You have the right to request an examination by an independent physician, psychiatrist, clinical psychologist, or qualified examiner of your choice. If you are unable to obtain an examination, the court may appoint an examiner for you upon your request.

8. You have the right to be represented by an attorney. If you do not have funds or are unable to obtain an attorney, the court will appoint an attorney for you.

9. You have the right to be present at your court hearing.

10. As a general rule, you do not lose any of your legal rights, benefits, or privileges simply because you have been admitted to a mental health facility (see your copy of the "Rights of Individuals"). However, you should know that persons admitted to mental health facilities will be disqualified from obtaining Firearm Owner's Identification Cards, or may lose such cards obtained prior to admission.

11. Information about the health care services you receive at a mental health or developmental disabilities facility is protected by privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (P.O. 104-191) at 45 CFR 160 and 164. Your personally identifiable health information will only be used and/or released in accordance with HIPAA and the Illinois Mental Health and Development Disabilities Confidentiality Act [740 ILCS 110].



State of Illinois
Department of Human Services - Division of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

I certify that I provided respondent with a copy of this form. (pages 1-5)

☒ English    ☐ Spanish    ☐ Other

on **4/22/25**

Specify language: _____

Time: **6:50am**

Signature: _____ LSW

Title: **Behavioral Health Clinician**

Printed Name: **Valerie Minor, LSW**

A Guardianship and Advocacy Commission has been created which consists of three divisions: Legal Advocacy Services, Human Rights Authority and the Office of the State Guardian. The Commission is located at:

**Chicago Regional Office**
160 N. La Salle Street
Suite S500
Chicago, IL 60601
Phone: (312) 793-5900
Fax: (312) 793-4311
TTY: (866) 333-3362

**Springfield Regional Office**
830 S. Spring Street
Springfield, IL 62704
Phone: (217) 785-1540
Fax: (217) 524-0088
TTY: (866) 333-3362

Equip for Equality, Inc. is an independent, not-for-profit organization that administers the federal protection and advocacy system to people with disabilities in Illinois. Equip for Equality, Inc., provides self-advocacy assistance, legal services, education, public policy advocacy, and abuse investigations. The office is located at: **Website:** www.equipforequality.org

**Main/Chicago Office**
20 N. Michigan, Ste 300
Chicago, Illinois 60602
(800) 537-2632 or
(312) 341-0022
TTY: (800) 610-2779
Fax: (312) 800-0912

The information you provide on this form is protected by privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) ([PL 104-191] at 45 CFR 160 and 164). Your personally identifiable health information will only be used and/or released in accordance with HIPAA and the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

I have explained these rights to the individual (or the guardian of the individual, if applicable) and have provided him or her a copy of it. A copy of this form has been filed in the individual's clinical record.

_____ LSW
Staff signature

Signature of Individual Receiving Services

☑ Check here if individual refuses to sign

Valerie Minor, LSW
Staff Name and Title

4/22/25 @ 6:50am
Date and Time

_Jesus Estrada_
Witness' Name (required only if individual refuses to sign)

Witness' Signature (required only if individual refuses to sign)