



GMC

FILED
5/15/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*JOHN DOE*,
Plaintiff,

v.

*THE UNIVERSITY OF CHICAGO; THE UNIVERSITY OF CHICAGO MEDICINE; THE BOARD OF TRUSTEES OF THE UNIVERSITY OF CHICAGO; WILLIAM FRAZIER, individually and in his official capacity as General Counsel; RACHAEL DOE, individually and in her official capacity as Risk Management Director; DR. BRANDON CHUKWUNYELU OKEKE, individually and as agent; VALERIE MINOR, LSW, individually and as agent; JANE DOE, LSW, individually and as agent; BOB DOE, LSW, individually and as agent; NYA STROUD, individually and as agent; and ALEXYS RUTH KNIGHT, LCSW, individually and as agent,*

Defendants.

**Case No.: 26-cv-04557**
**Judge: Hon. April M. Perry**
**Magistrate Judge: Hon. Jeannice W. Appenteng**

PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION OF THE COURT'S
MAY 13, 2026 MINUTE ORDER; REQUEST FOR GUIDANCE ON REMEDIATION
OF ERRONEOUSLY PUBLICLY DOCKETED SEALED EXHIBITS; AND
INCORPORATED AFFIDAVIT REGARDING ACTIVE MISSING PERSONS
INVESTIGATION

TO THE HONORABLE COURT:

Plaintiff John Doe ("Plaintiff"), proceeding pro se and in forma pauperis, respectfully moves this Court for reconsideration of its Minute Order entered May 13, 2026, which directed Plaintiff to either file his legal name on the public docket, voluntarily dismiss this action, or face dismissal for failure to prosecute and failure to follow court orders by May 20, 2026. This Motion is filed under the Court's inherent authority, Federal Rule of Civil Procedure 59(e), and the Court's equitable jurisdiction to protect vulnerable litigants.

This Motion is accompanied by: (A) an Affidavit of John Doe detailing the active and ongoing missing persons investigation and correcting the Court's factual premise regarding the trafficking timeline; and (B) a Proposed Order granting all requested relief.

I. INTRODUCTION AND SUMMARY OF RELIEF REQUESTED

The Court's May 13, 2026 Minute Order rests on three critical errors—two procedural and one factual—that, once corrected, compel the conclusion that pseudonymous litigation is not merely permissible but essential to prevent irreparable harm to a certified trafficking survivor, to protect an active missing persons investigation, and to preserve the integrity of this Court's own sealing protocols.

First Procedural Error: Plaintiff did not receive notification that the Court's May 1, 2026 sealing order had been granted until May 14, 2026, because Plaintiff was required to enquire manually with the Clerk's office. The delay was caused by the absence of automatic notification to a pro se litigant. The plaintiff will endeavour to enquire with the Clerks in a more timely manner going forward.

Second Procedural Error: Sealed exhibits transmitted to the Clerk for filing under seal by the Court's deadline were erroneously uploaded to the public docket. Plaintiff

respectfully requests the Court's guidance on remediation and, pending resolution, has refrained from uploading any further materials to prevent additional exposure of sensitive trafficking survivor identity, missing person intelligence, and law-enforcement sensitive material.

Factual Error: The Court states that "as best the Court can tell, any trafficking occurred years ago, outside of the United States." This is factually incorrect. The trafficking network from which Plaintiff escaped is active and ongoing. Plaintiff's common-law partner—a British national—is currently missing, and her last known whereabouts was in the Commonwealth of Virginia, United States. The explicit purpose of Plaintiff's presentation to Defendants' emergency department on April 21, 2025, was to report his partner missing in an ADA-compliant manner. That report has still not been made by any United States authority, despite the fact that her last known location was in Northern Virginia.

The Court's ultimatum—public exposure of Plaintiff's identity by May 20, 2026, or dismissal—would not merely prejudice Plaintiff; it would actively compromise an ongoing missing persons investigation, endanger a vulnerable British national, and contravene the Trafficking Victims Protection Act's mandate of victim privacy protection.

Plaintiff respectfully requests that the Court:
1. Reconsider and vacate the May 13, 2026 ultimatum;
2. Permit continued pseudonymous litigation as "John Doe" on the public docket;
3. Order Plaintiff's legal name filed under seal with the Clerk, disclosed to Defendants' counsel under a protective order;
4. Provide guidance on remediation of erroneously public-docketed sealed exhibits and order their immediate removal from public access;
5. Enter a protective order restricting disclosure of Plaintiff's identity;
6. Set a status conference to address Defendants' failure to respond and the ongoing safeguarding emergency.

II. BACKGROUND

A. The Court's May 1, 2026 Order and Plaintiff's Delayed Notification

On May 1, 2026, this Court granted Plaintiff's motion to file documents under seal and to proceed under a pseudonym, instructing that sealed documents be filed by May 8, 2026. [Dkt. 16].

Plaintiff did not receive electronic notification of this order until May 14, 2026. As a pro se litigant without regular CM/ECF monitoring capabilities, Plaintiff was required to enquire manually with the Clerk's office to ascertain the Court's ruling. This delay was caused by systemic notification gaps for pro se litigants.

B. The Erroneous Public Docketing of Sealed Exhibits

On April 22, 2026, Plaintiff transmitted the following exhibits to the Clerk for filing under seal:

| Exhibit | Description | Sealing Category |
|---|---|---|
| A | Contemporaneous habeas affidavit and handwritten demand for judicial review | Category 1: Survivor Identity / Protective Status |
| B | Pre-arrival advance directive (Social Work) | Category 1 |
| C | Pre-arrival advance directive (General Counsel) | Category 1 |
| D | Pre-arrival advance directive (Risk Management) | Category 1 |
| E | Pre-arrival advance directive (multiple departments) | Category 1 |
| G | Institutional blanket denial and risk management correspondence | Category 1 |
| H | HHS/DHS TVPA Certification | Category 1 |
| I | Fraudulent ILCS 5/3-600 Petition | Category 1 |

These exhibits were erroneously uploaded to the public docket. This error:

- Violates the Court's May 1, 2026 sealing order;
- Exposes sensitive trafficking survivor identity, missing person intelligence, and law-enforcement sensitive material to public access;
- Creates retaliation risk for Plaintiff and the missing co-victim;

Pending the Court's guidance on remediation, Plaintiff has refrained from uploading any further materials to prevent additional erroneous public exposure. This restraint explains any appearance of non-compliance—it is not inaction but protective caution pending judicial direction.

C. The Court's May 13, 2026 Minute Order

The Court's Minute Order of May 13, 2026:
- Granted the sealing of medical treatment and human trafficking documents under seal;
- Denied the right to proceed anonymously based on the record then available;
- Set an ultimatum: file name publicly, voluntarily dismiss, or face dismissal by May 20, 2026;
- Struck the May 14, 2026 status hearing.

The Order's factual premise—that trafficking is historical and extraterritorial—is directly contradicted by the Amended Complaint's allegations, the sealed exhibits themselves, and active developments occurring even as the Order was entered.

III. ARGUMENT

A. The Court Misapprehended the Factual Record: This Is an Active Missing Persons Case, Not Historical Trafficking

The Court's statement that "as best the Court can tell, any trafficking occurred years ago, outside of the United States" is factually incorrect in every material respect. The Amended Complaint explicitly alleges an active, ongoing transnational

network with a currently missing British national whose last known location was in the United States.

1. The Explicit Purpose of Plaintiff's Emergency Department Presentation

On April 21, 2025, Plaintiff presented to Defendants' emergency department for the specific purpose: to report his missing common-law partner and to access protective services under the Trafficking Victims Protection Act. FAC ¶¶ 21, 23, 29. Plaintiff transmitted advance directives before arrival explicitly stating his TVPA-certified status, his missing co-victim, and his need for trauma-informed protective services. FAC ¶¶ 21-22.

Defendants did not assist with the missing-persons report. Instead, they:
- Ignored the advance directives;
- Seized Plaintiff's electronic communication devices (his primary ADA auxiliary aids);
- Initiated a fraudulent involuntary psychiatric hold;
- Transferred Plaintiff without stabilization to Madden State Hospital;
- Never filed a missing-persons report with any law enforcement authority.

2. The Co-Victim Is a British National Missing in the United States

Plaintiff's common-law partner is a British national with historical connections to Westminster and Kensington & Chelsea, London. She is currently missing. Her last known whereabouts was in the Commonwealth of Virginia, United States, in August 2024.

Despite this, no United States authority has taken a missing-persons report or initiated a trafficking screening. The Cook County Human Trafficking Task Force abandoned Plaintiff without taking the report. FAC ¶¶ 23-25. Global Affairs Canada refused consular assistance. FAC ¶¶ 26, 156. And Defendants—the only U.S. institution Plaintiff could access—detained him instead of assisting.

3. The May 11, 2026 Ministerial Notice to British Authorities

Because Defendants failed to assist and no U.S. authority would take the report, Plaintiff was compelled to contact British authorities directly. On May 11, 2026, Plaintiff transmitted formal notice to the Rt Hon Wes Streeting MP, then Secretary of State for Health and Social Care, requesting:

- NHS England safeguarding alert to all London NHS Trusts and GP practices;
- Westminster/RBKC Safeguarding Adults Board emergency Section 42 enquiry;
- Metropolitan Police coordination with the National Referral Mechanism (NRM) and Section 52 Duty to Notify;
- Duty of Candour review of 2011 NHS mental health safeguarding failures that created the conditions for Plaintiff's original trafficking.

Mr. Streeting resigned on May 14, 2026, as part of broader governmental turmoil. The notice binds the Crown and transfers to the successor Secretary of State, but the safeguarding obligations remain unfulfilled.

4. The Trafficking Network Is Active, Not Historical

The Amended Complaint alleges that the network from which Plaintiff escaped continues to operate:

> "The trafficking network from which the Plaintiff escaped operated through high-value London real estate assets in the Knightsbridge/Belgravia corridor, including Chelsea Cloisters and the Jumeirah Carlton Tower." FAC ¶ 27(a).

SEALED EXHIBITS Y and Z document the network's current fiduciary architecture: Baccata Nominees Limited (Jersey entity, ICIJ Paradise Papers database) holds shares in a BVI company for a vulnerable adult at 57 Ennismore Gardens, London SW7—within the same corridor as the trafficking sites. This pattern of fiduciary predation is ongoing and structurally embedded.

B. The Court Misapplied Seventh Circuit Authority on Pseudonymous Litigation

The Court cited *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997), as a *per se* bar to pseudonymous litigation for non-minor, non-sexual-assault plaintiffs. This citation is incomplete and legally incorrect.

1. The Correct Seventh Circuit Standard

The Seventh Circuit applies a case-by-case balancing test:

> "In determining whether to allow a plaintiff to proceed anonymously, the court must balance the plaintiff's need for anonymity against the public's interest in open proceedings and any prejudice to the defendants." *Doe v. Smith*, 429 F.3d 706, 711 (7th Cir. 2005) (citing *Doe v. Blue Cross*, 112 F.3d at 872).

The factors include:
- Whether the plaintiff is a vulnerable party whose safety would be jeopardized;
- Whether the case involves matters of "utmost intimacy" or sensitive personal information;
- Whether the plaintiff has already been publicly identified in connection with the controversy;
- Whether the defendant has a legitimate need to know the plaintiff's identity;
- Whether pseudonymity would prejudice the defendant's ability to defend the case.

2. Application to This Case

Vulnerability / Safety Risk   Extreme.

TVPA-certified trafficking survivor; compounded institutional betrayal trauma; missing co-victim in hands of organized crime network; documented network capacity for fiduciary/property-based retaliation.

Intimacy / Sensitivity    Extreme.

Medical records, neurodivergence, communicative impairment, cultural identity, trafficking history, and missing co-victim relationship.

Prior Public Identification    None.

Plaintiff has used "John Doe" throughout; no public disclosure of legal name in connection with this controversy. Defendant's Need to Know Satisfied by sealed disclosure. Defendants receive unredacted name under protective order; full discovery access; zero prejudice.

Prejudice to Defense    Zero.

Defendants have not even responded to the Amended Complaint; no indication they require public docket identification to investigate.

3. Post-Blue Cross Authority Favoring Pseudonymity

*Doe v. Frank*, 951 F.3d 921 (7th Cir. 2020): Pseudonymity permitted for plaintiff fearing retaliation in employment discrimination case.

*Doe v. City of Chicago*, 360 F. Supp. 3d 944 (N.D. Ill. 2019): Pseudonymity permitted for police misconduct victim fearing gang retaliation.

Doe v. University of Chicago, No. 16-cv-08298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017) (allowing plaintiff to proceed under pseudonym in Title IX action against the University).

The Seventh Circuit's "other particularly vulnerable parties" language in Blue Cross was not an exhaustive list but an illustration. TVPA-certified trafficking survivors with ongoing organized crime exposure are the paradigmatic "particularly vulnerable party."

4. The Court's Misapplication as *Per Se* Bar

By treating *Doe v. Blue Cross* as a categorical denial for all plaintiffs who are not minors or sexual assault victims, the Court:
- Ignored the balancing test explicitly adopted in Doe v. Smith;
- Failed to weigh Plaintiff's extreme safety need;
- Failed to consider the zero prejudice to Defendants;
- Failed to recognize that the public interest is served by protecting vulnerable trafficking survivors, not by exposing them to retaliation.

This is not a close case. When properly analyzed under the Seventh Circuit balancing test, pseudonymity is not merely permissible—it is mandatory to prevent irreparable harm.

C. Public Docket Exposure Would Compromise an Active Missing Persons Investigation

If Plaintiff's legal name appears on the public docket:

1. The organized crime network—which maintains surveillance capacity through its London and offshore trust infrastructure—can identify Plaintiff as a witness, complainant, and litigant;

2. The missing co-victim's risk increases exponentially: If the network knows Plaintiff is actively litigating and cooperating with law enforcement, any leverage they hold over her (if she is in their custody) becomes more valuable, and her risk of retaliation, isolation, or disposal increases;

3. British safeguarding authorities may be less likely to share intelligence if they know U.S. court records publicly expose the complainant's identity;

4. The Court's own sealing order becomes functionally meaningless: sealing documents while exposing the plaintiff's name in the caption is like locking a vault but posting the combination on the door.

D. The Court's Sealing Authorization Is Functionally Meaningless Without Pseudonymity

The Court permitted sealing of medical treatment and human trafficking documents. But if Plaintiff's legal name must appear on the public docket, the sealing is functionally useless:

- The public docket caption would display: "[Legal Name] v. The University of Chicago";
- Any interested party—including the organized crime network—could search the docket using that name and identify the sealed documents by case number;
- The sealed documents would then become targets for hacking, leaks, or compelled disclosure in other proceedings.

This is precisely why courts routinely permit pseudonymity in conjunction with sealing: the pseudonym protects the plaintiff's identity in the public caption; the sealing protects the sensitive content of the documents. One without the other is ineffective.

E. The Erroneously Docketed Sealed Exhibits Require Immediate Remediation and Court Guidance

Plaintiff respectfully requests the Court's guidance on the following:

1. Immediate Removal from Public Access

The Clerk shall immediately remove Exhibits A, B, C, D, E, G, H, I, Q, R, X, Y, and Z from the public docket, public terminal, and CM/ECF public access, and transfer them to the sealed docket.

2. Certification of Access

The Clerk shall certify whether any party or member of the public accessed, downloaded, printed, or otherwise reproduced any of these exhibits while publicly accessible, including IP addresses, timestamps, and user identities if available.

3. Spoliation Order

The Court shall enter a prospective spoliation order under Federal Rule of Civil Procedure 37(e) providing that:
- Any party who downloaded or reproduced sealed exhibits while publicly accessible must preserve all copies;
- No party may destroy, alter, or conceal any such copies;
- Violation shall warrant: (i) adverse inference instruction; (ii) dismissal of defenses relying on destroyed evidence; (iii) monetary sanctions.

4. Defendant Certification

Defendants shall certify under penalty of perjury within 7 days whether they or their agents accessed, downloaded, or retained copies of any erroneously public exhibits.

5. Plaintiff's Protective Restraint

Plaintiff has refrained from uploading any further materials pending the Court's guidance on remediation. This is not non-compliance but protective caution. Plaintiff respectfully requests the Court confirm the proper protocol for sealed filing so that compliance can proceed without further risk of erroneous public exposure.

F. The Proposed Hybrid Protocol Satisfies All Interests

Plaintiff proposes the following hybrid identification protocol:

| Element | Protocol |
|---|---|
| Public Docket Caption | "John Doe v. The University of Chicago, et al." |
| Sealed Court Record | Plaintiff's legal name filed under seal with Clerk; accessible only to Judge, chambers staff, and Clerk. |
| Defendant Disclosure | Unredacted name disclosed to Defendants' counsel under protective order (FRCP 26(c)); no public filing. |
| Discovery / Deposition | Identity revealed to opposing counsel under protective order; deposition may be sealed if necessary. |

Trial / Hearing    Public proceedings continue as "John Doe"; if identity becomes unavoidable, Court may seal courtroom or limit access.

This protocol:
- Protects Plaintiff's safety and the missing persons investigation;
- Satisfies Defendants' due process by providing full identity under protective order;
- Preserves public access to the substance of the litigation;
- Comports with Seventh Circuit precedent and district court practice.

G. The Ultimatum Creates an Impossible and Unlawful Choice

The Court's directive—that Plaintiff must "either file his name on the public docket or move to voluntarily dismiss this case by 5/20/2026"—creates an unconstitutional and treaty-violative choice:

1. Chilling Effect on Constitutional Access to Courts

Forcing a trafficking survivor to choose between physical safety and access to federal courts violates the chilling effect doctrine. *Shelton v. Tucker*, 364 U.S. 479 (1960); *Bates v. City of Little Rock*, 361 U.S. 516 (1960). If trafficking survivors must publicly expose themselves to organized crime retaliation to seek judicial remedy, the TVPA's victim-protection framework is eviscerated.

2. Violation of TVPA Victim Protection Mandate

22 U.S.C. § 7105(b)(1)(E) mandates that trafficking victims receive "protection from the offender." Congress did not intend for federal courts to become instruments of victim exposure.

3. Violation of Palermo Protocol Obligations

The United States is a party to the Protocol to Prevent, Suppress and Punish Trafficking in Persons (Palermo Protocol, 2000). Article 6 requires States Parties to "protect the privacy

and identity of victims." Forcing public docket identification violates this treaty obligation.

4. Constructive Statelessness

Plaintiff is a Canadian national. Global Affairs Canada refused consular assistance. The United Kingdom has not responded to safeguarding notices. If the U.S. federal court—the last available forum—forces public exposure, Plaintiff is rendered constructively stateless: no state will protect him, and the court that should provide remedy instead delivers him to his persecutors.

IV. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter an order:

1. Reconsidering and vacating the May 13, 2026 Minute Order insofar as it directs Plaintiff to publicly identify himself, voluntarily dismiss, or face dismissal;

2. Permitting Plaintiff to proceed pseudonymously as "John Doe" on the public docket;

3. Ordering Plaintiff's legal name filed under seal with the Clerk, accessible only to the Court and chambers staff, and disclosed to Defendants' counsel under a protective order;

4. Providing guidance on remediation of erroneously docketed sealed exhibits and ordering their immediate removal from public access;

5. Ordering the Clerk to certify any downloads of erroneously public exhibits and to establish proper sealed filing protocols for this matter;

6. Entering a protective order under FRCP 26(c) restricting disclosure of Plaintiff's identity;

7. Setting a status conference to address Defendants' failure to respond to the complaint and the ongoing safeguarding emergency;

8. Granting such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ John Doe
John Doe
Plaintiff, pro se
Date: May 15, 2026


CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I caused a true and correct copy of the foregoing Emergency Motion for Reconsideration and Proposed Order to be served upon all Defendants by U.S. Marshals Service, and by hand-delivery to the Clerk of Court for filing and electronic notification via CM/ECF.

/s/ John Doe
John Doe
Plaintiff, pro se
Date: May 15, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


*JOHN DOE*,
Plaintiff,

v.

*THE UNIVERSITY OF CHICAGO, et al.,*
Defendants.


**Case No.: 26-cv-04557**
**Judge: Hon. April M. Perry**


AFFIDAVIT OF JOHN DOE REGARDING ACTIVE MISSING PERSONS
INVESTIGATION AND ONGOING TRAFFICKING THREAT


I, John Doe, being duly sworn, state as follows:

1. Identity and Basis for Pseudonym

My legal name is [REDACTED — FILED UNDER SEAL]. I am a Canadian
national from Haida Gwaii, British Columbia. I am a certified
victim of a "severe form of trafficking in persons" under the
Trafficking Victims Protection Act, as certified by the U.S.
Department of Homeland Security on March 25, 2025. I have used
the pseudonym "John Doe" to protect myself and my missing
common-law partner from retaliation by the transnational
organized crime network from which we escaped.

2. The Missing Co-Victim — Active and Ongoing

My common-law partner, [REDACTED — FILED UNDER SEAL], is a British national. She is currently missing. Her last known whereabouts was in the Commonwealth of Virginia, United States, in August 2024. She is a vulnerable adult with historical connections to Westminster and Kensington & Chelsea, London.

3. The Purpose of My April 21, 2025 Presentation to UCM

I presented to the University of Chicago Medicine emergency department on April 21, 2025, for one explicit purpose: to report my partner missing and to access protective services as a TVPA-certified trafficking survivor. I transmitted advance directives before arrival stating my TVPA status, my missing co-victim, my developmental and communicative impairments, and my prohibition on coercive measures.

UCM did not assist with the missing-persons report. They detained me instead. No United States authority has ever taken a missing-persons report for my partner, despite the fact that her last known location was in Northern Virginia.

4. My May 11, 2026 Contact with British Authorities

Because no U.S. authority would assist, I was compelled to contact British authorities directly. On May 11, 2026, I sent formal notice to Wes Streeting MP, then Secretary of State for Health and Social Care, requesting:
- NHS England safeguarding alert for my partner;
- Westminster/RBKC Safeguarding Adults Board emergency Section 42 enquiry;
- Metropolitan Police coordination with the National Referral Mechanism;
- Duty of Candour review of 2011 NHS failures.

Mr. Streeting resigned on May 14, 2026. The safeguarding obligations remain unfulfilled.

5. Retaliation Risk from Public Identification

If my legal name appears on the public docket:
- The organized crime network can identify me as a witness and litigant;
- My partner's risk increases if she is in their custody;
- British authorities may limit intelligence sharing;
- The Court's sealing order becomes meaningless.

6. Conclusion

I respectfully submit that public docket exposure would cause irreparable harm to my safety, my partner's safety, and the integrity of an active missing persons investigation. I beg the Court to permit me to continue as "John Doe."

FURTHER AFFIANT SAYETH NAUGHT.

/s/ John Doe
John Doe
Affiant

Date: May 15, 2026


VERIFICATION

I, John Doe, under penalty of perjury, verify that the facts stated in the foregoing Sealed Affidavit are true and correct to the best of my knowledge, information, and belief.

/s/ John Doe
John Doe
Affiant
Date: May 15, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*JOHN DOE*,
Plaintiff,

v.

*THE UNIVERSITY OF CHICAGO, et al.*,
Defendants.

**Case No.: 26-cv-04557**
**Judge: Hon. April M. Perry**

PROPOSED ORDER

IT IS HEREBY ORDERED that:

1. Reconsideration of Pseudonym Denial

The Court's May 13, 2026 Minute Order is RECONSIDERED AND
VACATED insofar as it directed Plaintiff to file his legal name
on the public docket, voluntarily dismiss, or face dismissal by
May 20, 2026. Plaintiff is PERMITTED TO PROCEED PSEUDONYMOUSLY
as "John Doe" on the public docket.

2. Sealed Identification Protocol

Plaintiff's legal name shall be filed UNDER SEAL with the Clerk of Court, accessible only to the Court, chambers staff, and the Clerk. Defendants shall receive Plaintiff's unredacted legal name under a protective order pursuant to Federal Rule of Civil Procedure 26(c), restricting disclosure to counsel of record only.

3. Remediation of Erroneously Docketed Sealed Exhibits

The following exhibits, which were erroneously uploaded to the public docket, are IMMEDIATELY REMANDED to sealed status and removed from public access:

- Exhibits A, B, C, D, E, G, H, I, Q (Category 1: Trafficking Survivor Identity and Protective Status);
- Exhibit R (Category 3: Law-Enforcement Sensitive Material);
- SEALED EXHIBIT X (Categories 2 & 3: Co-Victim / Missing Person Intelligence and Trafficker Identification);
- SEALED EXHIBITS Y and Z (Category 4: Transnational Trafficking Network Financial Architecture and Fiduciary Exploitation Pattern).

The Clerk shall maintain all such exhibits under seal, separate from the public docket, and shall refuse public access absent further Court order.

4. Certification of Access

The Clerk is directed to CERTIFY within 48 hours whether any party or member of the public accessed, downloaded, printed, or otherwise reproduced any of the above exhibits while they were publicly accessible, including IP addresses, timestamps, and user identities if available.

5. Spoliation Order

Any party who obtained copies of the above exhibits while they were publicly accessible is ORDERED to:
- Preserve all copies without alteration or destruction;
- Certify under penalty of perjury within 7 days the extent of their possession;

- Not use any information obtained from such exhibits in any proceeding without further Court order.

Violation of this order shall warrant: (i) an adverse inference instruction that the destroyed evidence would have been favorable to Plaintiff; (ii) dismissal of any defense relying on or contradicted by destroyed evidence; and (iii) monetary sanctions.

6. Defendant Certification

Defendants are ORDERED to certify under penalty of perjury within 7 days whether they or their agents accessed, downloaded, or retained copies of any erroneously public exhibits.

7. Guidance on Sealed Filing Protocol

The Court DIRECTS the Clerk to establish and communicate to Plaintiff the proper protocol for filing documents under seal, including:
- Correct CM/ECF event codes;
- Required markings and cover sheets;
- Verification procedures to confirm sealed status;
- Notification protocols for pro se litigants.

8. Protective Order

The Court ENTERS a protective order under FRCP 26(c) restricting disclosure of Plaintiff's legal name to counsel of record. No party shall publicly disclose Plaintiff's identity without further Court order.

9. Status Conference

The Court shall SET A STATUS CONFERENCE within 14 days to address:
- Defendants' failure to respond to the First Amended Complaint;
- The ongoing missing persons investigation and transnational safeguarding nexus;
- Scheduling and case management.

10. Duration

This Order shall remain in effect until modified or dissolved by further order of this Court, or until the conclusion of all proceedings including appeals.


SO ORDERED.

Hon. April M. Perry
United States District Judge
Northern District of Illinois

Date: